UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:16-cr-00092-MOC

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| Vs. ) | ORDER |
| ) | |
| **BOAKAI BOKER,** ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** is before the Court on defendant's Motion to Suppress. Having considered defendant's motion and conducted an evidentiary hearing, the Court enters the following findings, conclusions, and Order.

### FINDINGS AND CONCLUSIONS

On June 13, 2014, Secret Service Special Agent Matt Hayes obtained from United States Magistrate Judge David C. Keesler a search warrant for the premises of 1225 S. Church St., Apt. 333, Charlotte, North Carolina, the residence of Mr. Boker. *In re Search Warrant*, 3: 14mj112-DCK (W.D.N.C. 2014). Within an hour, defendant's apartment was searched and an inventory of items seized was prepared and given to defendant. Id. at 2. Seven days later, a return on such warrant was made to this court. Id. In early 2015, Secret Service agents sought and obtained a second warrant authorizing the forensic search of three computers seized during the search of Mr. Boker's home. *In re Search Warrant*, 3:15mj60-DCK (W.D.N.C. 2015).

1

In his motion[1] and through oral arguments, defendant asserts that: (1) the Secret Service failed to comply with the knock and announce rule in executing the first search warrant; (2) the Secret Service failed to comply with Fed.R.Crim.P. 41 by providing him only with a copy of the face of the warrant and neither the supporting affidavit or attachments; and (3) that the Secret Service failed to complete their search of the items seized within the time provided in the first search warrant. While defendant does not challenge Judge Keesler's finding that probable cause supported issuance of the warrants, this court has independently reviewed the applications that support each warrant and finds that ample probable cause existed.

At the hearing, the government called Special Agent Matt Hayes, who testified concerning the search of defendant's apartment and the forensic analysis of the three computers seized during that search. The court closely observed the witness's demeanor on both direct and cross examination and during questions posed by the court and found SA Hayes' testimony highly credible. SA Hayes testified that when he and his search team arrived at defendant's apartment, he knocked on the apartment door, announced the presence of the police and that they had a search warrant, and to open the door. He testified that he knocked loudly enough for anyone inside to hear and that when no one answered within 10-15 seconds, which he felt was a reasonable time for a person in a one bedroom apartment to answer. He then had a maintenance person for the apartment unlock the door. The maintenance person stepped aside, and the search team opened the door and entered the apartment with their weapons drawn. He testified that defendant and another person were on the couch and that he ordered them to lay down on the floor while members

---

[1] Defendant is proceeding pro se and made his Motion to Suppress within the body of a response filed the week before trial and filed the actual Motion to Suppress (#66) the day after the jury was selected. While the government is correct that such motion was filed well outside the time allowed in the Pretrial Order, the Court has treated the motion as timely *nunc pro tunc* inasmuch as defendant is representing himself. Further, the court has liberally read his pleading and arguments and during the evidentiary hearing attempted to ask questions of the government's witness that would elicit testimony concerning issues raised by defendant.

2

of the team did a protective sweep of the apartment. After the apartment was secured, agents seized (in relevant part) computers and cell phones and left defendant with a copy of the face of the warrant and a copy of the inventory of items seized. On cross examination, defendant asked questions through which he attempted to show that the agents did not knock and that they could have heard the loud video games being played in the apartment. Neither SA Hayes' version of events nor his veracity were impeached on cross examination. The defendant did not testify and no other evidence was presented. Defendant was occasionally assisted by standby counsel during the hearing.

As to defendant's argument that the Secret Service failed to comply with the knock and announce rule in executing the first search warrant, the court finds no credible evidence supports such argument. The "knock and announce" rule requires officers to knock and announce their purpose and then wait a reasonable amount of time to allow the occupants the opportunity to comply with the law. Richards v. Wisconsin, 520 U.S. 385, 394 (1997). The court finds that the search team satisfied both prongs of the rule by knocking on the door, announcing who they were and that they had a search warrant, and waiting a sufficient time for an occupant to get to the door or verbally respond that they needed more time to get to the door. The court notes, however, that

> [t]his is not to say, of course, that every entry must be preceded by an announcement. The Fourth Amendment's flexible requirement of reasonableness should not be read to mandate a rigid rule of announcement that ignores countervailing law enforcement interests.

Wilson v. Arkansas, 514 U.S. 927, 934 (1995). Thus, whether an entry complies will depend on the facts and circumstances of each case. In this particular case, the actions of these agents fully satisfied the requirements of the Fourth Amendment.

3

Case 3:16-cr-00092-MOC    Document 67    Filed 07/18/17    Page 3 of 6

In addition, in construing defendant's arguments liberally, the court finds that Mr. Booker may be attempting to assign error to the facts that the officers came in with weapons drawn and through use of a master key held by a maintenance person.

First, the fact that the search team came in with weapons drawn and conducted a protective sweep is of no constitutional moment.

> [T]here is nothing inherently unreasonable about an officer conducting a protective sweep with his or her weapon drawn. Nor is it unreasonable to expect the officer to sometimes aim that weapon at an individual until an assessment can be made as to whether the individual poses a threat.

Anderson v. United States, 107 F.Supp.2d 191, 199 (E.D.N.Y. 2000). As the Supreme Court has found in the execution of a narcotics search warrant, "[t]he risk of harm to both the police and occupants is minimized if the officers routinely exercise unquestioned command of the situation." Michigan v. Summers, 452 U.S. 692, 702-703 (1981), limited by Bailey v. United States, 133 S.Ct. 1031 (2013) (holding that the detention of the occupants of the premises allowed under *Summers* is spatially constrained and limited to the immediate vicinity of the premises to be searched.).

Second, having a maintenance person unlock the door with a master key after a knock and announce goes unheeded also raises no legal concern as a search warrant provides more than enough authority for agents to request such lay assistance. Further, use of a key (rather than breaking the door down during a dynamic entry) provides indicia that agents executing the process of this court implemented procedures designed to deescalate matters and minimize damage to private property.

Defendant next argues that the Secret Service failed to comply with Fed. R. Crim. P. 41 by providing him with only a copy of the face of the warrant and an inventory, but neither the supporting affidavit nor attachments describing the property to be searched or items to be seized. In support, defendant cites a number of cases which appear to predate what is now the applicable

4

law. Before 2006, it was arguable that the government was required to give defendant not just a copy of the warrant at the time of the search, but also a copy of the description of the premises to be searched and the items to be seized. See United States v. McGrew, 122 F.3d 847, 849-50 (9th Cir. 1997). As the years pass, cases go up and the law comes down, and it is now clear that there is no requirement that a copy of the affidavit or the attachments which support the affidavit be served on the defendant (or property's occupant/possessor) at the time of the search. See United States v. Grubbs, 547 U.S. 90, 99 (2006). Indeed, as another trial court recently held:

> Rule 41 does not mandate the delivery of anything other than the warrant and a receipt for the property taken. There is no "constitutional mandate that an executing officer possess or exhibit the affidavit or any other document incorporated into the warrant at the time of the search in order for the warrant to be valid." *U.S. v. Hurwitz*, 459 F.3d 463, 472 (4th Cir. 2006). *See also Baranski v. Fifteen Unknown Agents of Bureau of Alcohol, Tobacco and Firearms*, 452 F.3d 433, 444 (6th Cir. 2006) (no constitutional requirement or requirement under Rule 41 to leave incorporated affidavits, etc.).

United States v. Self, 100 F. Supp. 3d 773, 789 (D. Ariz. 2015). It was, therefore, sufficient for SA Hayes to serve a copy of the face of the warrant at the time of search and then leave with defendant an inventory of items seized. Indeed, that is precisely what is called for in the Search Warrant, which is a form issued by the Administrative Office of the United States Courts. See AO 93 (Rev. 11/13) Search and Seizure Warrant (providing "you must give a copy of the warrant and a receipt for the property taken to the person from whom … the property was taken….").

Finally, defendant contends that the Secret Service failed to complete their search of the items seized within the time provided in the first search warrant. He argues that the June 13, 2014, warrant for the search of his apartment, which required the search of the premises to be completed within 14 days, somehow limited the time agents had to analyze or further search the ESI contents of items seized during the premises search. It is undisputed that the search of the apartment was within the time allowed by the search warrant (it occurred the day the warrant issued) and the

5

evidence presented indicated that the Secret Service analyzed the contents of the computers by August 6, 2014. See Gov. Ex. 2 at 7; Bates # USA-00005541. The 14 day limitation contained in the warrant for the search of the apartment is not a limit on the time the agents have to review the evidence seized. Defendant also argued that a 60 day limit applied. Even if such a temporal restriction applied (which the court cannot find), the facts established at the hearing showed that the forensic search of the computers was completed well within the time allowed under the warrant and Rule 41 and was inherently conducted within a reasonable time. Id. The court notes well that Rule 41(e)(2)(B) speaks directly to this issue and provides, as follows:

> *Warrant Seeking Electronically Stored Information.* A warrant under Rule 41(e)(2)(A) may authorize the seizure of electronic storage media or the seizure or copying of electronically stored information. Unless otherwise specified, the warrant authorizes a later review of the media or information consistent with the warrant. <u>The time for executing the warrant in Rule 41(e)(2)(A) and (f)(1)(A) refers to the seizure or on-site copying of the media or information, and not to any later off-site copying or review</u>.

Fed.R.Civ.P. 41(e)(2)(B) (emphasis added). The fact that reports were later generated or that a second warrant was issued is of no relevance. In short, there was nothing unreasonable or unlawful about the investigation of the evidence seized as a result of this search. While defendant has clearly taken issue with the time taken by the Secret Service in analyzing the materials seized, the court can find no violations of any substantive or procedural law.

**ORDER**

**IT IS, THEREFORE, ORDERED** that defendant's Motion to Suppress (#66) is **DENIED.**

Signed: July 18, 2017

Max O. Cogburn Jr.
United States District Judge